ROBERTSON *v.* COLLIER.

Opinion delivered March 6, 1922.

COVENANTS—BREACH OF WARRANTY—LIABILITY OF COVENANTOR.—Where
a vendor executed a deed with covenant of warranty to forty
acres of land, when in fact he had no title to five acres thereof, he
is liable to the purchaser for the consideration paid for the five
acres.

Appeal from Hempstead Chancery Court; *James D.
Shaver,* Chancellor; affirmed.

STATEMENT OF FACTS.

Mattie Belle Smithey and her two daughters brought
this suit against A. H. Andres and wife and Ed B. Col-
lier for the purpose of reforming a deed made by A. H.
Andres and wife to J. H. Smithey, deceased, who was the
husband of Mattie Belle Smithey and the father of her
two daughters.

The complaint alleged that the five acres of land men-
tioned in the complaint was omitted from the deed by
mistake. and that J. H. Smithey went into possession

of the land and continued in possession of it until his death; that Mattie Belle Smithey has been in possession of the land ever since the death of her husband.

Ed. B. Collier was made a defendant to the suit because the record title was in him. Collier filed an answer in which he denied the material allegations of the complaint and filed a cross-complaint against W. J. Robertson and I. E. Robertson, his wife. As grounds of action, he stated that he had title to said land by a warranty deed executed to him by W. J. Robertson, and asked that, if the court should reform the deed executed to J. H. Smithey by said A. H. Andres, he should recover judgment against W. J. Robertson on his breach of warranty.

According to the evidence of Mrs. Mattie Belle Smithey and her two daughters, on the 12th day of March, 1907, J. H. Smithey purchased the five acres of land in controversy from A. H. Andres. The reason for the purchase was that he owned an adjoining tract of land and bought the land in controversy to square up his north boundary line. He received a warranty deed from A. H. Andres and wife, but the land was misdescribed so as to place it in another subdivision, according to the United States land survey. J. H. Smithey went into possession of the land when he purchased it, and held possession of it as a part of his cultivated field until he died in May, 1918. He also paid the taxes on the land. Since his death, his widow and daughters have held possession of the land and paid the taxes on the same.

According to the testimony of A. H. Andres, he sold to Smithey the land in controversy, and by mistake the deed described it as being in another section. Smithey took possession of the land and held possession of it as a part of his field until he died. His widow and daughters have been in possession of it ever since.

Other evidence tended to corroborate him, but, inasmuch as there has been no appeal from that part of the decree granting a reformation against A. H. Andres in

favor of Mattie Belle Smithey and her two daughters, it is not necessary to abstract the testimony on this point more at length.

Ed. B. Collier was a witness for himself. According to his testimony, he purchased 67 acres of land in all from W. J. Robertson and was to buy it at so much an acre, amounting in the aggregate to $6,400. Robertson told him that he would get all of the forty in which the land in controversy is situated, except three acres out of the southwest corner. After Collier purchased the land he talked with Smithey about running a line between them, but it was never done. After Smithey's death he had said forty acres of land surveyed and found that he only got possession of 29 acres. Nearly all of the land that he bought from Robertson is cleared and under fence. The rest of the land is in an adjoining forty. He never learned that there was less than 37 acres in this particular forty until after the survey was made. He got thirty acres in an adjoining forty, which was also described in the deed.

The deed from W. J. Robertson and wife to Ed. B. Collier was introduced in evidence. It is dated Dec. 4, 1918, and recites a consideration of $6,400 cash in hand. The description in the deed is as follows: "All the SW 1/4 of the SW 1/4 of sec. 35, in twp. 12 S., R. 24 W. (except 3 acres in the southwest corner of same), being all of said tract of land north of the public road known as the Hope and Centerville public road; also, about 3 acres in the northeast corner of the NW 1/4 of NW 1/4 of sec. 2, twp. 13 S., R. 24 W., being all of that part of said tract of land lying north of the public road known as the Hope and Centerville public roads; also the following described land, to-wit: Beginning at the southwest corner of the SE 1/4 of SW 1/4 of said sec. 35, in twp. 12 S., R. 24 W., and run thence north 3 chains to a stake; thence east 20 chains to a stake on the east line of the said SE 1/4 of SW 1/4 of sec. 35; thence south 3 chains to a stake at the southeast corner of said

SE 1/4 of SW 1/4 of said sec. 35; thence west with the south boundary line of said section and township 20 chains to the point of beginning, containing 6 acres, more or less; also the following tract of land, beginning at the northeast corner of the NE 1/4 of NW 1/4, sec. 2 twp. 13 S., R. 24 W., and run south 9 chains and 9 links to a stake at the northeast corner of the parcel and lot of land deeded to P. A. Tharp on the 11th day of May, 1909; thence west with P. A. Tharp's land line 15 chains to a stake at his northwest corner; thence south 3 chains and 50 links to a stake at the said P. A. Tharp's southwest corner; thence west 25 degrees north 6 chains and 6 links to a stake at the southwest corner of the land deeded to one Jone L. Kelly by A. H. Andres and wife on April 2, 1909; thence north 10 chains and 27 links to a stake 35 links west of the northwest corner of the N. E. 1/4, N. W. 1/4, sec. 2, twp. 13 S., R. 24 W.; thence east 20 chains and 70 links to point of beginning, containing 21 acres, more or less, and all the land conveyed by this deed, aggregating 67 acres, more or less."

The deed is in common form and contains a covenant of warranty as follows: "And we hereby covenant with said Ed. B. Collier that we will forever warrant and defend the title to the said lands against all lawful claims whatever."

According to the testimony of W. J. Robertson, he sold a tract of land containing 67 acres, more or less, to Ed. B. Collier and received $6,000 for the place. Nothing was said about how much per acre he was to receive for the land. Robertson had purchased the land from R. N. Berry. Berry had purchased the land from Burt Tidwell, who had in turn purchased it from A. H. Andres. Robertson knew that Smithey owned some land adjoining the land he conveyed to Collier, but he did not represent to Collier that he had 37 acres in the forty-acre tract. He just sold Collier 67 acres, more or less, including what land he owned in this particular forty and in an adjoining forty-acre tract.

R. N. Berry and Burt Tidwell both testified that when they bought the land the strip of land in question was fenced and in the possession of J. H. Smithey.

The chancellor was of the opinion that there should be a reformation in favor of the plaintiffs, Mattie Belle Smithey and her daughters, against A. H. Andres, so as to vest the title in them to the land in controversy.

The chancellor also was of the opinion that Ed. B. Collier should recover from W. J. Robertson the value of said five-acre tract of land in the sum of $95.52 per acre, or the sum of $477.60 in the aggregate, with 6 per cent. interest per annum from the date of the execution of the deed to him from Robertson until paid.

A decree was entered accordingly, and to reverse that decree W. J. Robertson and I. A. Robertson, his wife, have prosecuted an appeal to this court.

No appeal was taken from the decree of the chancellor granting a reformation in favor of Mattie Belle Smithey and her daughter to the five-acre tract in controversy and investing in them the title thereto.

*J. D. Montgomery,* for appellant.

The Smithey parcel of land was included in the deed by mistake, as appellant laid no claim to this land. It is the policy of courts of equity to grant relief against such mistakes. 121 Ark. 578; 50 Ark. 179; 144 Ark. 23; 96 Ark. 512.

There was no breach of covenant or warranty as to the number of acres to be conveyed, and the appellee could not recover the value of any alleged shortage unless it was sufficient to amount to a material or gross mistake. 95 Ark. 375; 19 Ark. 102; 146 Ark. 223.

The sale was in gross for a stipulated sum and not a sale by the acre, and there was no misrepresentation or fraud, upon which appellee could recover. 112 Ark. 134; 95 Ark. 375; 71 Ark. 91.

*James H. McCollum,* for appellee.

Appellee is entitled to recover upon either of two grounds, viz., misrepresentation as to the quantity of ground owned by appellant, or the warranty contained in the deed.

A chancellor's findings will be sustained unless clearly against the preponderance of the evidence. 142 Ark. 73; 142 Ark. 104; 145 Ark. 247.

The difference in the amount of land conveyed and the amount received by appellee is too great, and he is entitled to relief on the ground of gross mistake. 19 Ark. 102; 100 Ark. 28; 61 Ark. 120; 142 Ark. 189; 101 Ark. 95; 141 Ark. 363.

*J. D. Montgomery,* for appellant, in reply.

Appellee has not shown that the land which he purchased—67 acres more or less—is short to any material extent. 61 Ark. 120; 112 Ark. 134. He has contended for a shortage in only one 40-acre tract, whereas the whole number of acres conveyed should be taken as the basis for comparison as to whether or not there was such a material shortage as to amount to gross mistake.

HART, J. (after stating the facts). The court found that W. J. Robertson and I. A. Robertson by their warranty deed conveyed to Ed. B. Collier this same five acres of land, and that they did not have title thereto; that Ed. B. Collier had paid to W. J. Robertson the sum of $95.52 per acre, aggregating $477.60, for said five-acre tract of land. It was therefore decreed that he should recover this sum as damages for breach of warranty.

Counsel for W. J. Robertson seek to reverse the decree on the ground that Robertson sold to Collier 67 acres of land for the gross sum of $6,400, and insist that the concluding part of the description in the deed shows that a shortage of five acres was not material. In other words, they claim that the concluding part of the description, "and all the land conveyed by this deed aggregating 67 acres more or less", implies that the acreage had

been estimated, and that the words "more or less" were merely descriptive of the property conveyed.

The trouble about this contention is that counsel have not taken into consideration the description of the land by metes and bounds or by government subdivisions. It will be remembered that the theory of the appellees in filing their cross-complaint was not that Collier had been induced to purchase the land by the false representations of Robertson in respect to the quantity which the tract contained.

The chancellor, who tried the case, granted the relief on the ground that Robertson had conveyed to Collier five acres of land, being the land in controversy, which he did not own, and that, having executed a warranty deed to Collier, he was liable on his breach of warranty.  The chancellor did not find that the actual quantity of land obtained by Collier was substantially less than he supposed he was purchasing; but he found for him on  a breach of warranty contained in the deed executed to him by Robertson.  The parties are bound by their contract.  The description in the deed from Robertson to Collier commences as follows:  "All of the SW 1/4 of the SW 1/4 of sec. 35, township 12 south, range 24 west, except three acres in southwest corner of same, being all of said tract lying north of the public road known as the Hope and Centerville public road."  The five acres in controversy, for which Mrs. Smithey was granted a decree of reformation, is included in the description just recited.  Therefore, Robertson by his deed conveyed five acres of land to Collier which he did not own.  He executed to Collier a warranty deed to said land, and is liable to Collier for breach of warranty. According to Collier's testimony, he purchased the land at $95.52 an acre.  It is true this statement is denied by Robertson, who testified the consideration was in gross, but the chancellor made a specific finding on this point in favor of Collier, and it cannot be said that his finding is against the preponderance of the evidence.

The decree of the chancellor is correct, and will therefore be affirmed.